Reese, J.
delivered the opinion of the court.
The plaintiff brought against the defendant an action of detinue for a negro slave, it was proved on the trial that one Joe! Brown, under a bequest in whose will the defendant claimed title to the negro in question, wishing in August, 1826, to raise money, offered to sell the slave to plaintiff on the following terms, to wit: “That he, Brown, would reserve to himself a life estate in said slave, and that at the death of Brown, the slave should go to Payne, if Payne would pay to him $200.” This offer was accepted by Payne, and he thereupon paid the money to Brown. The slave was not at the time of the contract, nor at any time delivered to Payne, but remained in the possession of Brown till his death, which took place in 1835; when he came into the possession of defendant, under a bequest in Brown’s will. There was uo bill of sale or other writing signed by Brown in evidence of the contract as to said slave, but the agreement on the subject was merely verbal. Upon this state of facts the court charged the jury, that a remainder in a slave could not be created by a verbal declaration and sale, but only by deed, will or other writing, and if the remainder in the slave was created by verbal contract it would be void at law, and pass no title to the slave. The court further charged the jury, that whether the remainder in the slave was void or not, if the slave was sold by Brown to Payne, and no bill of sale was made at the time, or other writing, nor possession delivered to Payne, then the sale would be invalid and not pass the title to Payne, although the purchase money was pa d by him, That under the provisions of the act of 1784, in order to make the sale of a slave in this state valid, “possession must be delivered by the vender to the vendee, or a bill of sale executed. . A verdict was rendered in favor of the defendant, a motion for a new trial was made by the plaintiff, which having been overruled by the court, an appeal in the nature of a writ error has been prosecuted to this court.
Upon the charge of the circuit court to the jury, two questions arise, 1st, Can a remainder in a slave, or other chattel be created without will or deed, or other writing, to take *511 effect after the determination of a life estate interest reserved? 2d. Under the provisions of the act of 1784, can a parol gift or sale of a slave be held to be valid, as between the parties, when soph parol gift or contract of sale is neither accompanied nor followed by the delivery of the slave to the donee or bargainee. As to the first point, it may be remarked that anciently there could be no limitation over of a chat-tie interest, hut a gift for life, carried the absolute interest, and of course therefore it would seem, that a reservation for the life of the grantor, would continue in him the alsolute interest. As early as the time of Coke, Manning’s case, 8 Coke, 95, it was settled that chattels real might be so limited by will, and it has since been well settled, that a personal chattel may be also given by will to A for life, with remainder over to B, and the limitation over after the life interest in the chattel has expired, will be good. Jn Child vs. Baylie, Cro. J. 450, the court speak of such a remainder as being created equally by grant or devise. See 2 Kent’s Com. 352, (2d ed.) That a remainder can be created in a chattel by will or deed, is established by numerous American decisions. In North Carolina indeed, in several cases, it has been ruled, that the limitation of a remainder in a slave by deed, is not good. There courts seem to regret that they have got into such a train of decisions. The contrary, however, has been determined in this state, in the case of Cain and Wife vs. Marly, 2 Yer. 582, where it is settled that a deed of gift of slaves, to take effect after the death of the donor is valid. But no case has been, or it is believed, can be shown where a remainder in a personal chattel, to take effect after the determination of a life interest, has been held good, when been created by parol, and without deed, will, or other writing But it is argued, that upon principle this can be done, that as at common law, the payment of the price of a personal chattel, upon a contract of purchase and without delivery, vests in the vendee the property in such chattel; why will not the same consequence attend a remainder, when that is the subject of purchase and payment? The difference is founded upon the nature of a remainder itself, which in the case of a chattel is not a present title to the *512 tliina; sold, but a right to its future enjoyment after the deter-initiation of a life estate interest, which has been carved out °f ¡t. Chancellor Kent in his Commentaries, 2 vol. 4G8, (2d ed.) says, “the thing sold must have an actual or potential existence, and be capable of delivery, otherwise it is not strictly a contract of sale, but a special or executory agreement.” A remainder in a chattel is not a thing so existing as to be capable of delivery.
But if the argument in question were even more plausible than it is, still as at common law limitations in remainder of chattels, by will or deed, met with a slow if not reluctant sanction from the courts, and have never been carried further, there is no ground .of either policy or power to tempt or warrant this court, in now giving effect to a mere parol creation of them. We think, therefore, that there is no error in the charge of the court to the juty upon the first point.
2d. As to the construction of the act of 1784, “it has been constantly held, that when possession is delivered at the time a gift or sale of a slave is made, it is good as between the parties and vests a title without a deed.” Such is the language of this court in the case of Davis vs. Mitchell, 5 Yer. 282. Numerous decisions made in North Carolina from the time almost of the passing of the act to the present day, sustain the same principle, and this too has been the unvarying tenor of judicial construction upon the act within our own state. It cannot now be departed from. To do so now would be productive of immense mischief and place in great danger the titles of thousands to this species of property. But enlightened judges, both in North Carolina and Tennessee, have in recent cases expressed their surprise and regret that the courts of an earlier period had not felt themselves constrained to adhere to the literal requirements of the statute. See 2 Dev. 326, 329, 332; and 3 Yer. Rep. 334-5. Virginia and Kentucky more wisely, it is believed, enforced the literal provisions of the act of the former state of 1758, similar in its terms, if not identical with the act of 1784. See 1 Wash. Rep. 139: 1 Marsh. 163. The ground upon which the courts in North Carolina *513 and Tennessee, in their departure from the statute placed . . themselves, was that a delivery of the slave at the time the sale or gift, being a public and notorious act, evidencing a change of ownership, made unnecessary the bill of sale required by the statutes; and now we are asked, in as much as former courts have by judicial construction removed one barrier set up against frauds in this species of property by the statute, to remove that other barrier, which the courts themselves set up as a substitute for it. Thinking as we do with regard to the act of 1784, and the decisions upon it, we have no power to do so, and even if we had, we have no inclination on grounds of public policy to do so, but would content ourselves with saying, in the language of the Baron’s qf England, on an early occasion, “nolumus mutari.” Let the judgment be affirmed.
Judgment affirmed.